Archibald C. Wemple, J.
The undersigned Judge at the hearing (Code Crim. Pro., § 807) announced that he would not review the question of whether or not there was probable cause for the issuance of the search warrants in question. This was solely a matter for determination by the Honorable John P. Dwyer, Justice of the -Supreme Court, who originally issued the search warrants. Therefore, his judgment as to probable cause will not be reviewed herein.
However, certain testimony was taken and certain facts were elicited at the hearing which was held in the Schenectady County Court. This is the trial court to which the warrants and accompanying papers were transferred, pursuant to section 810 of the Code of Criminal Procedure, and the following findings are now made.
1. The person seeking the search warrant in the Galietta case was Trooper Joseph V. Karas who in his affidavit and prayer for relief said, ‘11 respectfully request that the Court issue a Warrant and Order -of Seizure ”, etc. The person seeking the warrant in the Bichen case was Trooper Thomas J. 0 ’Ilea who made a similar request for a warrant in his prayer for relief in his affidavit. Admittedly neither Trooper Karas nor Trooper O’Hea appeared before Judge Dwyer on July 14, 1965 when the search warrants were issued by him.
2. The search warrants in each of the above cases were issued to “ any Peace Officer in the County of Schenectady”. The hearing herein clearly shows that while the peace officers to whom the warrants were given for execution participated in the raids, neither of them made the returns of the warrants. Nor were the returns made by the executing officers forthwith to the issuing Judge. Nor did said executing officers deliver to the *679 issuing Judge a written inventory of the property taken nor was an inventory verified by the officer executing the warrant before the issuing Judge. On the contrary, it appears from the hearing that the returns were signed by Trooper Zilinski in the Ricken case and by Trooper Creagan in the Galietta case and both verified before one Mead S, Kniskern, a Notary Public of Albany County on July 15,1965.
3. - It further appears that the warrants and returns in the above case and other cases passed through several hands and into a sealed manila envelope and then through the hands of several State Troopers and ultimately to Judge Dwyer on July 19,1965. It is clearly evident that the officers making the search did not make direct returns to the Judge who issued the warrants.
4. The warrants and returns thereon were not delivered to the Schenectady County Court until on or about March 14,1966, some eight months after the search and seizure.
The following section of the Code of Criminal Procedure is quoted. “ § 791. Search warrant, defined. A search warrant is an order in writing in the name of the people, signed by a judge, justice or magistrate, of a court of criminal jurisdiction, directed to a peace officer, commanding him to search for personal property, and bring it before the judge, justice or magistrate,”
From the above it is clear that a search warrant is to be directed to a peace officer and requires the officer to bring the property found before the Judge, Justice or Magistrate. The hearing discloses that no such direction was followed by the officers in either of the searches herein.
5. It is also clear that the “ person seeking the warrant ” did not appear before the issuing Judge and make himself available for examination under oath as section 794 of the Code of Criminal Procedure seems to require,
6. Section 796 of the Code of Criminal Procedure requires that the person commanded make the search “ for the property specified, and to bring it before the judge, justice or magistrate ”. This direction was not followed.
7. However, it should be noted that, in each of the search warrants, Judge Dwyer directed (‘ and if you find any such evidence or any part thereof, to retain it until any further relief that the court may deem proper ”, Nothing in the papers indicates that Judge Dwyer made any further order relative to the evidence obtained on the respective searches.
*680 8. Section 802 of the Code of Criminal Procedure requires that the search warrant must be executed and returned to the issuing Judge within 10 days after its date. While the return appears to be dated within the 10-day period following July 15, 1965 it was not, as noted above, returned by the officers executing the warrants but by others.
9. Section 803 of the Code of Criminal Procedure requires the officer who takes property under a warrant to give a receipt in detail of the property taken. The hearing discloses that the receipts, if any, were given in one of the above cases and offered in the other of the above cases not at the time taken, but later, and at the State Police barracks after the defendants were arrested and placed in custody.
It clearly appears from the above findings and conclusions that the procedures followed by the troopers in both the above cases were irregular both at the time of the issuance of the respective warrants above and at the time of the execution of the warrants above. Variations are also found in the execution of the returns made in both of the cases above and also in the transfer of the returns to this court. These irregularities and variations in procedures were more than ministerial in nature. They were substantial and affected the very essence of the warrants involved.
It is not of great moment in these cases that the defendants were alleged to have been engaged in illegal gambling activities previous to the search and seizure as indicated in the affidavits of Trooper O’Hea and Trooper Karas. It is more important to note that each of the defendants was an American citizen and each was entitled to all his or her constitutional right against unlawful search and seizure. It is further to be noted that while legal proceedings carry a presumption of regularity there is no such presumption as to police activities. Certainly it follows that if police officers are to be given special rights to invade the homes and businesses of persons by wiretap and search warrants in criminal investigations then such officers must be held to a strict compliance with the Code of Criminal Procedure.
The whole matter before the court in the cases before it may be summed up by the following statement and quotation: “ Therefore, it is vital and essential that the legal rights of any man, whosoever he may be, must be maintained and upheld and no ruler, public official or tribunal may disregard the rights of any individual under our laws. This fundamental conception was well expressed long ago by Sir William Pitt, when speaking in the House of Commons, he said:1 The poorest man may in his cottage bid defiance to all the force of the crown. It may be *681 frail; its roof may shake; the wind may blow through it; the storms may enter — but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement ’. ”
As it was in the days of Pitt, so it is today.
The prayer for relief of each of the above-named defendants is granted in the following respects, namely, (1) the searches and seizures are declared illegal and void; and (2) the District Attorney is precluded from using any evidence obtained in such searches upon the trials of the above-captioned cases. (3) An order dismissing the indictments and discharging the defendants will be denied pending a further hearing of a motion for such relief.